## ADOPTION OF GALEN.

Suffolk. May 6, 1997. - June 11, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, O'CONNOR, GREANEY, FRIED, & MARSHALL, JJ.

*Adoption. Parent and Child,* Adoption. *Minor,* Adoption. *Probate Court,* Judicial discretion.

A proceeding for adoption under G. L. c. 210, § 2A, by a natural mother of the child and her partner, was remanded for the Probate Court judge to state with specificity the reasons for the judge's denial of a motion to waive the G. L. c. 210, § 5A, home study, or to allow the motion, in circumstances in which the record contained substantial evidence that the best interests of the child would be served by allowing the adoption and in which those interests would be served by a speedy resolution of the adoption proceedings. [204-207] O'CONNOR, J., dissenting, with whom LYNCH, J., joined.

PETITION filed in the Suffolk Division of the Probate and Family Court Department on July 19, 1996.

Motions requesting waiver of home study pursuant to G. L. c. 210, § 5A, and to reconsider were heard by *Elaine M. Moriarty,* J.

Leave to prosecute an interlocutory appeal was allowed in the Appeals Court by *Kent B. Smith,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Katherine Triantafillou (Joyce Kauffman* with her) for the petitioners.

*Scott Harshbarger,* Attorney General, & *Richard I. Gordon,* Assistant Attorney General, for the Attorney General, amicus curiae, submitted a brief.

*Sarah R. Wunsch & Mary L. Bonauto* for Gay & Lesbian Advocates & Defenders & another, amici curiae, submitted a brief.

MARSHALL, J. The petitioners, two women whom we shall call Nancy and Laura, challenge an order entered by a judge

of the Suffolk Division of the Probate and Family Court Department denying their motion to waive a Department of Social Services (department) home study pursuant to G. L. c. 210, § 5A, in connection with their joint petition to adopt Nancy's biological child, whom we shall call Galen. We remand the case for entry of an order explaining with specificity the reasons for the denial of the motion in light of this opinion or, in the alternative, an order allowing the motion.

1. We summarize the relevant facts as they were presented to the motion judge. At the time they filed their motion (July, 1996), Nancy and Laura had been involved in a relationship with each other for nearly ten years, and had lived together for nine of those years. For some time prior to the birth of Galen, Nancy and Laura planned together for one of them to have a child, and in 1995 Galen was conceived by Nancy through artificial insemination from an anonymous donor from California.[1] Nancy, a respiratory therapist for ten years at a Boston hospital, and Laura, a psychiatric nurse at a different medical institution, jointly own their home and share all their respective financial responsibilities. In July, 1996, Nancy was not working so that she could be at home with Galen, and Laura financially supported both Nancy and Galen. The petitioners share all parenting responsibilities, including all decisions concerning Galen's health, education, and welfare. They intend to continue this arrangement.

Nancy and Laura filed numerous affidavits evidencing that Nancy is a loving and responsible parent and that Laura is equally loving and responsible in her dealings with Galen. In addition to their own affidavits, the petitioners filed affidavits from family members, including affidavits from the mothers of both petitioners (it appears that at least Nancy's father is deceased), brother and sisters, nephews, nieces, and a cousin. The affidavits describe the close bond between Galen and both of the petitioners, and the acceptance of Galen into a warm, welcoming, and loving extended family. There were affidavits filed by friends and colleagues of the petitioners whose observations, in every case based on personal knowledge, describe the stability of the relationship between the petitioners and the stable home environment for Galen. The petitioners

---

[1] The motion judge allowed the petitioners' motion to waive the notice requirements of G. L. c. 210, § 4. That aspect of her ruling is not at issue in this appeal.

also submitted three supportive affidavits from medical professionals, including one from Galen's pediatrician and one from a pediatric nurse who had observed Galen and the two women on numerous occasions.

Recognizing, as we do, that the affidavits were submitted by individuals supportive of the petitioners' wish to adopt Galen, we nevertheless observe that there is no suggestion in any affidavit that hints at any possibility that Galen is being raised in anything but a stable, supportive, and loving home environment, at the center of which are Nancy and Laura, and which extends broadly to their immediate families, close friends, and colleagues.

2. We consider first the petitioners' claim under G. L. c. 210, § 2A. That section provides that a petition for adoption of a child below the age of fourteen years must be approved in writing by the department, or an agency authorized by it, unless one of four statutory conditions is met. On appeal, the petitioners argue that the decision of the judge ordering the department to undertake a home study implies that unmarried copetitioners must *each* meet one of the statutory conditions. The judge's order is not entirely clear in this respect, but is at least susceptible to the interpretation suggested by the petitioners. Confusion may have arisen because in *Adoption of Tammy*, 416 Mass. 205, 213 n.6 (1993), where we concluded that it was permissible for the natural mother and another woman to adopt a child, both women were "blood relatives" of the child because the mother had been artificially inseminated with the sperm from a male relative of the other woman. In that case both petitioners met the requirements of G. L. c. 210, § 2A (B).

In *Tammy*, we did not mean to suggest that it is a statutory requirement that both petitioners meet one of the conditions of G. L. c. 210, § 2A. See, e.g., *Adoption of a Minor (No. 2)*, 367 Mass. 684, 686-687 (1975), in which the copetitioners were the child's paternal grandmother (a "blood relative") and her husband who did not satisfy any of the statutory conditions. For purposes of G. L. c. 210, § 2A, where a decree of adoption is sought by copetitioners, it is necessary for only one of the petitioners to satisfy one of the conditions specified in G. L. c. 210, § 2A (A)-(D). In this case Nancy satisfies the requirements of § 2A (B); as the natural mother of Galen, she is a "blood relative of the child sought to be

adopted." See *Curran, petitioner*, 314 Mass. 91, 95 (1943) (mother may petition to adopt her own natural child).

3. We turn now to consider the application of G. L. c. 210, § 5A, to this case. That section provides that in every petition for adoption of a child under the age of fourteen years (as Galen is here) the department shall make "appropriate inquiry to determine the condition and antecedents of the child for the purpose of ascertaining whether he is a proper subject for adoption and to determine whether the petitioners and their home are suitable for the proper rearing of the child." The section further provides that within a specified period of time the department shall submit to the court a written report "as will give the court full knowledge as to the desirability of the proposed adoption." The legislation mandates that no decree should be made on a petition for adoption of a child under the age of fourteen years "until such report has been received," but further provides that the court may waive the requirements of a home study "in the case of a petition for the adoption of a child of one of the parties petitioning for said adoption." G. L. c. 210, § 5A, third par. Because Galen is the child of Nancy, one of the parties petitioning for his adoption, the court had the discretion to waive the requirements of a home study by the department.

The petitioners argue that the judge abused her discretion. We are not, on this record, able to ascertain whether the petitioners are correct. In denying the motion to waive the home study, the judge noted that a home study "serves an important purpose" as it "assists the Court in determining whether an adoption should be allowed by providing, through independent child welfare professionals, relevant information about the child, parents and the home." She noted that the "only evidence" was submitted by the petitioners. She gave no further explanation for her decision.

We recognize, of course, that a home study "serves an important purpose," but a purpose that the Legislature said could be waived where, as here, one of the parties petitioning for adoption is a parent. Similarly, we recognize that the "only evidence" presented to the judge was evidence submitted by the petitioners. That ordinarily would be the case in every instance where a waiver is granted. Similarly, we agree that a judge may be assisted when "relevant" information about the child, parents, and home is provided through inde-

pendent child welfare professionals, but that information is not available in any case where a waiver is granted. (The fact that an affidavit is submitted by a petitioner does not necessarily mean that it is not "independent").

With respect to the information that the petitioners did submit, there is no basis for the judge to conclude that Galen is not "a proper subject for adoption"; Nancy is his biological mother, and the judge already has ordered that, pursuant to California law, the anonymous sperm donor is not required to be notified. That aspect of the G. L. c. 210, § 5A, home study mandate is satisfied. The only remaining reason for a home study is whether the petitioners and their home are "suitable for the proper rearing" of Galen.

The waiver of the home study permitted by the Legislature in the case of an adoption of a child of one of the parties suggests a legislative acknowledgement that the best interests of the child are usually served in that relationship. This is consistent with other legislative determinations seeking to keep a child with a natural parent. See, e.g., G. L. c. 119, § 1. Furthermore, G. L. c. 210, § 5B, provides that, in making orders for adoption, the judge shall consider "the need of the child for loving and responsible parental care and all factors relevant to the physical, mental and moral health of the child." There were numerous affidavits, including one from the child's pediatrician, based on direct observations of Galen's interaction with both petitioners, that give no cause for concern about the "physical, mental and moral health" of Galen. The affidavits submitted by the petitioners stated unequivocally that they provide loving and responsible care for Galen.

General Laws c. 210, § 6, requires that the petitioners be of "sufficient ability to bring up the child and provide suitable support and education" for him. Both petitioners are educated, professional women, both of whom have been in stable employment situations over extended periods of time. There is nothing in the record to suggest that they have anything but "sufficient ability" and the financial means to care for, support, and educate the child.

The judge's discretion in deciding whether to waive a home study may not be arbitrary or capricious. See *Adoption of a Minor (No. 2)*, 367 Mass. 684, 688-689 (1975). See also *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption*, 376 Mass. 252, 260 (1978). The judge was pre-

sented with substantial evidence that the best interests of Galen would be served by allowing the adoption. The fact that the petitioners are both women who are engaged in a long, committed relationship cannot be a bar to adoption. *Adoption of Tammy*, 416 Mass. 205, 210 (1993).

It is in the best interests of children that there be a speedy resolution of adoption proceedings. See *Adoption of Jenna*, 33 Mass. App. Ct. 739, 742 (1992), quoting *Custody of a Minor*, 389 Mass. 755, 764 & n.2 (1983) ("[n]o cases of any kind have a greater claim for expedition at all stages than those involving care and custody of children"). We are informed by the Attorney General that the department faces a demanding burden because of its current work load of cases involving children who are subject to abuse, neglect, and other maltreatment; as of December 31, 1996, the department had 21,894 pending cases with insufficient staff to process all cases promptly. While that fact, alone, would not suffice to support the waiver of a home study, waiver requests do not occur in a vacuum, and the requirement of a home study may unnecessarily contribute to a delay in concluding the adoption proceedings.

The Attorney General also advises us that, when the department receives a motion to waive a home study, it checks its own records to determine whether it has ever been involved with either of the petitioners or with the child who is the subject of the adoption. If there has been no prior department involvement, and the department does not object to a motion to waive a home study, the court usually grants the motion. There is nothing in the record that establishes on how many occasions the home study is waived. But we see no reason to question the representation made by the Attorney General to this court. Particularly where, as here, a claim has been made that the only reason for ordering a home study is because the petitioners are of the same gender, it is incumbent on the judge to explain the reasons for ordering the home study.[2]

The case is remanded to the Probate Court for entry of an order either explaining with specificity the reasons for the

---

[2]The only report dealing with same-gender petitioners in adoption proceedings that has been drawn to our attention is that of The Citizens' Task Force on Adoption, established by the Governor on March 7, 1995, to examine adoption policy and law in the Commonwealth. In its final report

denial of the motion requesting waiver of the home study pursuant to G. L. c. 210, § 5A, or allowing the motion.

*So ordered.*

O'CONNOR, J. (dissenting, with whom Lynch, J., joins). The first issue raised by the petitioners and dealt with by the court, *ante* at 203, is whether the judge, misinterpreting G. L. c. 210, § 2A, thought that she was required as a matter of law to order a Department of Social Services (department) home study; that is, that she had no discretion to waive a home study. The court observes that the "judge's order is not entirely clear in this respect, but is at least susceptible to the interpretation suggested by the petitioners." *Ante* at 203. I do not agree. The judge states in the relevant portion of her order that "[G. L.] c. 210, § 5A does not mandate a [department] homestudy when one of the parties to the adoption is a parent to the child sought to be adopted [as is the case here]. In such a case the Court is given discretion over whether the DSS study should or should not be waived." This court's order of remand, which I consider inappropriate, finds no support from any lack of clarity in the judge's order as to her awareness that she could waive a home study by the department if she were confident that such a study would not help her to make the very important decision that was hers to make.

The record does not demonstrate that the judge abused her discretion by denying the petitioners' motion to waive the home study. The court agrees. Nevertheless, "[t]he case is remanded to the Probate Court for entry of an order either explaining with specificity the reasons for the denial of the

the task force noted that such cases

"are handled inconsistently from court to court, and inconsistently from step-parent adoptions, which they most closely model. Delays result. In step-parent adoptions, home studies are almost routinely waived on a single request by motion. In contrast, co-parent adoptions frequently require such a motion to be supported by numerous affidavits and letters attesting to the longevity and strength of the relationship between the prospective adopters and legal memoranda in support of such a waiver, and may not be allowed. . . . "

Report of The Citizens' Task Force on Adoption for the Commonwealth of Massachusetts § 7, Laws to Facilitate Adoption at 13 (Jan. 8, 1996).

motion requesting waiver of the home study pursuant to G. L. c. 210, § 5A, or allowing the motion." *Ante* at 206-207. The court announces three reasons for its order: (1) affidavits and other evidence submitted by the petitioners indicated that the petitioners had "provide[d] loving and responsible care for Galen," *ante* at 205; (2) "[i]t is in the best interests of children that there be a speedy resolution of adoption proceedings," *ante* at 206; (3) "a claim has been made that the only reason for ordering a home study is because the petitioners are of the same gender," *ante* at 206.

Surely, it is not unusual for petitioners in adoption proceedings to submit evidence favorable to them and to refrain from submitting unfavorable evidence. Perhaps the judge had that in mind when she stated in her order, "However, the homestudy serves an important purpose. It assists the Court in determining whether an adoption should be allowed by providing, through independent child welfare professionals, relevant information about the child, parents and the home. The Child is generally not represented in an adoption proceeding, and the only evidence presented is submitted by petitioners. Home studies may, and have been, ordered to assist the Court even in instances where the Petitioner is a natural parent."

Turning to the court's second reason for its order, I agree that in some situations "[i]t is in the best interests of children that there be a speedy resolution of adoption proceedings." Of course, it is also in the best interests of children involved in such proceedings that the decision to approve or disapprove of the adoption be made by a well-informed judge who has received the input of "independent child welfare professionals." In addition, this is not the type of case in which a child may wait — and wait — for a new and permanent home. In this case the child is not waiting for a new parent and a new home. The child is already united with his mother, having lived with her since birth. Surely, postponement of the adoption decision in this case in order to accommodate a home study neither suggests that the judge is inappropriately biased against the two female petitioners nor indicates that the judge has abused her discretion in any other way. Instead, it suggests that the judge is a conscientious judge who wants to make the right call on the adoption issue with the assistance that a department home study may provide. In my

view, remanding this case with an instruction to the judge "either [to] explain[] with specificity the reasons for the denial of the motion requesting waiver of the home study pursuant to G. L. c. 210, § 5A, or [to] allow[] the motion," *ante* at 206-207, is not called for.